**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

GERALD THOMPSON,                                                  Civil Action No. 1:15-cv-553

      Plaintiff,                                                           Barrett, J.
                                                                        Bowman, M.J
      vs.

LT. ESHAM, et al.,

      Defendants.

## REPORT AND RECOMMENDATION

This civil rights action brought by Plaintiff Gerald Thompson ("Plaintiff"), who was

an inmate at the Southern Ohio Correctional Facility and who is proceeding *pro se* and

*in forma pauperis*, is now before the Court on the motion for summary judgment of

Defendants Eshem, Hart, Rogers, Cool, and Davis (collectively, "Defendants"). (Doc.

71). Plaintiff has filed a response in opposition to Defendants' motion (Doc. 74), and

Defendants have filed a reply in support of their motion (Doc. 75). For the following

reasons, it is recommended that Defendants' motion be granted.

## I.    Background and Facts

Plaintiff, who was an inmate at the Southern Ohio Correctional Facility (SOCF),

brings this civil rights action under 42 U.S.C. § 1983. In his *pro se* complaint, as

amended by a subsequent complaint filed on October 23, 2015, Plaintiff names

numerous staff members of SOCF as defendants. (Docs. 6, 10).[1] Plaintiff has been

granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (Doc. 5).

---

[1] Plaintiff also filed a second amendment to the complaint seeking to add claims against four new
defendants (Doc. 18), which the undersigned construed as a motion requesting leave to file an
amendment to the complaint and postponed ruling upon to provide an opportunity for the previously

The claims asserted by Plaintiff in the complaint, as amended, concerned multiple unrelated issues and incidents against various defendants. (Doc. 7, Report and Recommendation, PageId 54-58; Doc. 13, Report and Recommendation, PageId 103-11).[2] The claims that survived the Court's initial screening include: (1) a claim against Defendant Eshem based on his alleged use of excessive force during an incident that occurred on January 25, 2015 at SOCF; (2) a claim against two "John Doe" defendants based on their participation in the incident involving the alleged use of excessive force that occurred on January 25, 2015 at SOCF; (3) a claim against Defendant Hart for alleged denial of medical care relating to the alleged use of excessive force that occurred on January 25, 2015 at SOCF; (4) claims against Defendants Eshem and Rogers based on their alleged use of excessive force in an incident that occurred on June 11, 2015 at SOCF; and (5) claims against Defendants Cool and Davis for failing to protect Plaintiff from known risks to his safety. (Doc. 13, PageId 112-13).

With respect to these claims, the record evidence is as follows.

**A. January 25, 2015 Incident**

On January 25, 2015, at approximately 5:50 p.m., Plaintiff refused to come out of his cell. (Doc. 71-2, Eshem Use of Force Report, PageId 649; Doc. 71-8, Eshem Affidavit, PageId 719). Defendant Eshem gave Plaintiff an order to cuff up, but Plaintiff refused. (Doc. 71-2, PageId 649; Doc. 71-8, PageId 719). Defendant Eshem was unable to make visual contact with Plaintiff because Plaintiff had a sheet across the door and window and had the lights covered up. (Doc. 71-2, PageId 649; Doc. 71-8,

_____

identified defendants to respond (Doc. 21). As that motion is pending, Defendants do not address the allegations in or seek summary judgment on behalf of the four new defendants identified in the second amendment to the complaint.
[2] These R&Rs were subsequently adopted by the district judge over the objections of Plaintiff. (Doc. 23).

PageId 719). Defendant Eshem ordered Plaintiff to remove the visual barriers and to cuff up. (Doc. 71-2, PageId 649; Doc. 71-8, PageId 719). Plaintiff then stated: "I am going to kill myself." (Doc. 71-2, PageId 649; Doc. 71-8, PageId 719). The door was partially opened at that time and the visual barrier fell to the floor. (Doc. 71-2, PageId 649; Doc. 71-8, PageId 719). Defendant Eshem observed that Plaintiff had his cell floor soaped and flooded. (Doc. 71-2, PageId 649; Doc. 71-8, PageId 719). Plaintiff was greased up and standing in the back of his cell with something in both hands. (Doc. 71-2, PageId 649; Doc. 71-8, PageId 719). Plaintiff then began squirting milk out of a bag towards Defendant Eshem. (Doc. 71-2, PageId 649; Doc. 71-8, PageId 719). Defendant Eshem deployed Oleoresin Capsicum ("OC") spray in the facial area of Plaintiff. (Doc. 71-2, PageId 649; Doc. 71-8, PageId 719). At that time, Plaintiff dropped the bags and the door was closed. (Doc. 71-2, PageId 649; Doc. 71-8, PageId 720). Defendant Eshem and Correctional Officer Scott then ordered Plaintiff to cuff up, and he complied. (Doc. 71-2, PageId 649; Doc. 71-8, PageId 720). Officer Scott next began escorting Plaintiff to segregation. (Doc. 71-2, PageId 649; Doc. 71-8, PageId 720.). Although Plaintiff attempted to pull away several times, Officer Scott maintained control of Plaintiff. (Doc. 71-2, PageId 649; Doc. 71-8, PageId 720). Plaintiff then began dragging his feet. (Doc. 71-2, PageId 650; Doc. 71-8, PageId 720). Defendant Eshem ordered the officers to stop to allow Plaintiff to walk on his own several times, but Plaintiff would go to the floor and pull the officers down with him. (Doc. 71-2, PageId 650; Doc. 71-8, PageId 720). When Plaintiff eventually was placed in the J2 strip cage, he refused to strip. (Doc. 71-2, PageId 650; Doc. 71-8, PageId 720).

Plaintiff was checked by Defendant Hart after the incident that same day. (Doc. 71-2, PageId 664). At that time, Plaintiff reported: "My wrist got cut by those cuffs." (*Id.*). Defendant Hart noted that Plaintiff was not in acute distress, his respiratory breaths were easy and regular, and he had a one-quarter inch abrasion on his left wrist that she advised be cleaned. (*Id.*).

After being checked by medical and mental health, Plaintiff then stripped. (Doc. 71-2, PageId 650; Doc. 71-8, PageId 720). Coming out of the strip cage, Plaintiff refused to walk down the stairs. (Doc. 71-2, PageId 650; Doc. 71-8, PageId 720). Two officers took control of Plaintiff and placed him in the J2 42 on constant watch. (Doc. 71-2, PageId 650; Doc. 71-8, PageId 720). The decontamination process began immediately when Plaintiff was removed from the area. (Doc. 71-2, PageId 650; Doc. 71-8, PageId 720). Plaintiff was offered a shower but refused. (Doc. 71-2, PageId 650; Doc. 71-8, PageId 720).

SOCF has a thirty-three page Use of Force Report packet and video footage for this incident, which have been submitted in support of Defendants' motion for summary judgment. (Doc. 71-2, PageId 645-77; Doc. 72). The details of the incident described above are consistent with those contained throughout the Use of Force Report and depicted in the video footage. Plaintiff refused to make a Use of Force Statement. (Doc. 71-2, PageId 671-72). The Deputy Warden of Operations Review of Use of Force form for the incident is signed by William Cool, Deputy Warden of Operations, on January 28, 2015, which indicates that the force was used to control or subdue an inmate who refused to obey prison rules and to control an inmate to prevent self-inflicted harm. (*Id.*, PageId 645). It recommends no further action be taken. (*Id.*,

PageId 645). The Managing Officer concurred with Defendant Cool's recommendation. (*Id.*, PageId 645).

This incident also was subject to review by the Rules Infraction Board (RIB). Upon review by the RIB, Plaintiff was found guilty of Inmate Rules of Conduct (7) Throwing any other liquid or material on or at another and (20) Physical resistance to a direct order. (Doc. 71-5, Greene Affidavit, PageId 701-02; Doc. 71-6, RIB Disposition, PageId 709).[3] That decision was affirmed by the Warden on February 18, 2015. (Doc. 71-6, Warden's Decision, PageId 712).

Plaintiff submitted an Informal Complaint Resolution form dated July 28, 2015 to prison officials, which provides details on his allegations about the January 25, 2015 incident. (Doc. 6-1, PageId 46). In the informal complaint, Plaintiff claims that he was assaulted by Defendant Eshem and others "with mace in a heated cell – windows closed – then tray/slot closed"; that he was "stuck in cell with heated mace & no air – lungs collapsed"; and that when he was taken out of his cell he was "forced to walk" in handcuffs and leg irons "in spite of no eye sight – head continuously slammed into walls." (*Id.*). He contends that Defendant Hart did not provide "mandatory eye flushing"; that he was not given a "decontamination shower" until February 15, 2015; and that he was not given any medical help until July 28, 2015. (*Id.*) He alleges he suffered the following untreated injuries: blurry vision, seizures, loss of memory and cognitive skills, vertigo, numb left wrist, and internal bleeding. (*Id.*).

**B. June 11, 2015 Incident**

On June 11, 2015, Defendant Eshem entered the K2 area while making rounds. (Doc. 71-3, Eshem Use of Force Report, PageId 682-84; Doc. 71-8, Eshem Affidavit,

---

[3] These Inmate Rules of Conduct are set forth in Ohio Admin. Code § 5120-9-06(C)(7) and (20).

PageId 720). At that time, he observed feces and water on the range. (Doc. 71-3, PageId 682-84; Doc. 71-8, PageId 720). Officer Henson and Officer Butterbaugh stated that Plaintiff had thrown feces at the porter and began flooding the range. (Doc. 71-3, PageId 682-84; Doc. 71-8, PageId 720). When Defendant Eshem went to talk to Plaintiff, he observed Plaintiff jumping on his bed. (Doc. 71-3, PageId 682-84; Doc. 71-8, PageId 720). Defendant Eshem told Plaintiff to cuff up. (Doc. 71-3, PageId 682-84; Doc. 71-8, PageId 720). Plaintiff had a milk bag and squirted it towards Defendant Eshem. (Doc. 71-3, PageId 682-84; Doc. 71-8, PageId 720). Although Defendant Eshem then deployed OC spray, it was ineffective. (Doc. 71-3, PageId 682-84; Doc. 71-8, PageId 720). After the failed attempt to use OC spray, Defendant Eshem requested that a MK9 fogger be brought into the area. (Doc. 71-3, PageId 682-84; Doc. 71-8, PageId 720). Plaintiff then stated: "I am going to cut one of you guys." (Doc. 71-3, PageId 682-84; Doc. 71-8, PageId 720). Defendant Eshem again ordered Plaintiff to cuff up. (Doc. 71-3, PageId 682-84; Doc. 71-8, PageId 720). After that order was made, Plaintiff walked towards the front of the cell, pulled a bottle from his pants, and pointed the bottle in the direction of Defendant Eshem. (Doc. 71-3, PageId 682-84; Doc. 71-8, PageId 720). Defendant Eshem responded by deploying OC from the MK9, but Plaintiff turned quickly and the OC did not strike the desired area. (Doc. 71-3, PageId 682-84; Doc. 71-8, PageId 721). Defendant Eshem once again ordered Plaintiff to cuff up, at which time Plaintiff picked up the bottle. (Doc. 71-3, PageId 682-84; Doc. 71-8, PageId 721). When Defendant Eshem deployed the OC for the third time, it had the desired effect and Plaintiff cuffed up. (Doc. 71-3, PageId 682-84; Doc. 71-8, PageId 721). Defendant Eshem observed that Plaintiff had bent the bed, tore up his mattress,

and stuffed the mattress in the toilet to flood the cell. (Doc. 71-3, PageId 682-84; Doc. 71-8, PageId 721).

All property was removed from Plaintiff's cell following the incident. (Doc. 71-3, PageId 682-84; Doc. 71-8, PageId 721). His cell also was aired out for a few minutes. (Doc. 71-3, PageId 682-84; Doc. 71-8, PageId 721). Plaintiff was offered a shower but he refused it. (Doc. 71-3, PageId 682-84; Doc. 71-8, PageId 721). He was placed on property restriction for twenty-four hours and returned to his cell with assistance from Defendant Rogers. (Doc. 71-3, PageId 682-84; Doc. 71-8, PageId 721).

When Defendant Hart examined Plaintiff that same day, Plaintiff reported "I got no injuries." (Doc. 71-3, PageId 682-84, 694). Defendant Hart also noted that Plaintiff was healthy with no acute distress and no injuries. (*Id.*, PageId 694).

SOCF has a twenty page Use of Force Report packet and video footage for this incident, which have been submitted in support of Defendants' motion for summary judgment. (*Id.*, PageId 678-97; Doc. 72). The details of the incident described above are consistent with those contained throughout the Use of Force Report and in the video footage. Plaintiff refused to make a Use of Force Statement. (Doc. 71-3, PageId 691). The Deputy Warden of Operations Review of Use of Force form for the incident is signed by William Cool, Deputy Warden of Operations, on June 12, 2015, which indicates that the force was used to control or subdue an inmate who refused to obey prison rules. (*Id.*, PageId 678). It recommends no further action be taken. (*Id.*). The Managing Officer concurred with Defendant Cool's recommendation. (*Id.*).

This incident also was subject to review by the RIB. Upon review by the RIB, Plaintiff was found guilty of Inmate Rules of Conduct (7) Throwing any other liquid or

material on or at another, (21) Disobedience of a direct order, (26) Disrespect to an officer, staff member, visitor, or other inmate, and (49) Destruction, alteration, or misuse of property. (Doc. 71-5, Greene Affidavit, PageId 702; Doc. 71-7, RIB Disposition, PageId 717).[4]  That decision was affirmed by the Warden on July 2, 2015. (Doc. 71-7, Warden's Decision, PageId 718).

Plaintiff submitted an Informal Complaint Resolution form dated July 28, 2015 to prison officials, which provides details on his allegations about the June 11, 2015 incident. (Doc. 6-1, PageId 50). In the informal complaint, Plaintiff claims that "C.O.'s Henson & Butterbaugh start a ritual of laying food tray on tray slot then Henson comes by cell and boldly whistles at me and finally when Henson walks by and opens tray slots of I/M . . . to receive dinner tray he refuses me my dinner." (Doc. 6-1, PageId 46). He continues: "But on this particular day I am reading the holy Quran outloud in Arabic" and when Defendant Eshem approached he "spray feces and urine in a humid plexee glass cell with no out." (*Id.*). He claims the "mattress molded[,]" the "water turned off[,]" and the "toilet [was] leaking with feces & urine[.]" (*Id.*). He then states "they press the sinks water button from the back 'hard' to make the sink over flow/flood cell." (*Id.*). He contends Defendant Eshem, along with Defendant Rogers, then sprayed him twice with mace, took him out of the cell, and took all of his items. (*Id.*). He states that there also was a "customary denial of medical." (*Id.*, PageId 51). In the Amended Complaint, Plaintiff alleges that his "lungs collapsed" and that he suffered "untreated . . . internal bleeding." (Doc. 10, PageId 68-69).

---

[4] These Inmate Rules of Conduct are set forth in Ohio Admin. Code § 5120-9-06(C)(7), (21), (26), and (49).

## C. Failure to Protect

Plaintiff claims that Defendant Cool failed to properly supervise SOCF correctional officers and investigate alleged excessive uses of force as well as ongoing threats to hurt or kill plaintiff.  (Doc. 10, PageId 68-69, 71, 74-76).  Plaintiff also claims that Defendant Davis failed to assign him to protective custody.  (Doc. 10, PageId 71, 73-76).

Defendant Cool is the Deputy Warden of Operations for SOCF.  (Doc. 71-1, Cool Affidavit, PageId 642).  As part of his job duties, he facilitates the reporting and investigation of all incidents involving the use of force by any corrections officer against any prison inmate.  (*Id.*).  He also supervises the process of such reporting and investigations, and ensures that all required steps have been completed prior to submitting completed investigations together with any of his recommendations to the Warden of SOCF for final disposition.  (*Id.*).  At no point during his review of the January 15, 2015 or the June 11, 2015 incident did Defendant Cool have reason to believe or suspect that any reporting was inaccurate or false.  (*Id.*).  Further, the review or consideration of protective custody requests does not fall within the scope of his job duties as Deputy Warden of Operations.  (*Id.*, PageId 644).

Defendant Davis is a Unit Management Chief at SOCF.  (Doc. 71-9, Davis Affidavit, PageId 723).  Defendant Davis did not deny Plaintiff protective custody at any time.  (*Id.*).  Any requests for protective custody would have been made by the protective control committee and subsequently approved by the Warden.  (*Id.*).  Defendant Davis is not nor has she ever been a member of the protective control committee.  (*Id.*).

## II.    Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).  A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986).  The moving party has the burden of showing an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has met its burden of production, the nonmoving party cannot rest on the pleadings, but must present significant probative evidence in support of his case to defeat the motion for summary judgment.  *Anderson*, 477 U.S. at 248-49. The mere scintilla of evidence to support the nonmoving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the nonmoving party.  *Id.* at 252.

As Plaintiff is a *pro se* litigant, his filings are liberally construed.  *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999).  However, his status as a *pro se* litigant does not alter his burden of supporting his factual assertions with admissible evidence when faced with a summary judgment motion.  *Maston v. Montgomery Cnty. Jail Med. Staff Personnel*, 832 F. Supp. 2d 846,

851-52 (S.D. Ohio 2011) (citing *Viergutz v. Lucent Techs., Inc.*, 375 F. App's 482, 485 (6th Cir. 2010)).

## III.    Analysis

Defendants' motion for summary judgment asserts that Plaintiff's action should be dismissed because (1) he failed to exhaust his administrative remedies in compliance with the Prisoner Litigation Reform Act (PLRA); (2) his claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87, 114 S. Ct. 2364, 129 L.Ed.2d 383 (1994); (3) the force used against him in the January 25, 2015 and the June 11, 2015 incidents was in pursuit of valid disciplinary objectives and did not violate the Eighth Amendment; (4) Defendant Hart was not deliberately indifferent to Plaintiff's medical needs following the January 25, 2015 incident; (5) Defendants Cool and Davis cannot be liable in their supervisory capacity for failure to protect and no evidence exists of any active participation by either in the alleged unconstitutional conduct; and (6) Defendants are entitled to qualified immunity.   For the following reasons, the undersigned finds that Defendants' motion is well-taken.[5]

---

[5] As Defendants have not demonstrated that Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87, 114 S. Ct. 2364, 129 L.Ed.2d 383 (1994), that issue is not included in the below analysis.  In *Heck*, the Supreme Court held that a plaintiff's claim for damages for a prior unconstitutional conviction or sentence, or other harm arising therefrom, is not cognizable under 42 U.S.C. § 1983 if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," unless the plaintiff can show that the underlying conviction or sentence was overturned.   512 U.S. at 486-87. However, if "the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed."   *Id.* at 487 (emphasis in original).  This holding is equally applicable to prison disciplinary hearings, the outcome of which have affected the duration of a plaintiff's term of incarceration.  *See Edwards v. Balisok*, 520 U.S. 541, 643, 117 S. Ct. 1517, 137 L.Ed.2d 771 (1997); *Muhammad v. Close*, 540 U.S. 749, 751-52, 124 S. Ct. 1303, 158 L.Ed.2d 32 (2004).  Several courts, however, have found that *Heck* does not automatically bar all Eighth Amendment claims whenever an inmate has been convicted of related disciplinary infractions. *Clarke v. Burke*, No. 1:16-cv-547, 2017 WL 397407, at *3-4 (S.D. Ohio Jan. 10, 2017), *report and recommendation adopted at* 2017 WL 386838 (S.D. Ohio Jan. 27, 2017); *Pullen v. Howard*, No. 2:14-cv-104, 2016 WL 4764894, at *9-10 (S.D. Ohio Sept. 13, 2016), *report and recommendation adopted at* 2017 WL 44855 (S.D. Ohio Jan. 3, 2017); *Mitchell v. Craft*, No. 1:12-cv-943, 2015 WL 4743045, at *3-5 (S.D. Ohio Aug. 10, 2015).  Although Defendants have shown that there are RIB decisions relating to the two incidents at issue here, they have not explained how Plaintiff's claims in this case would necessarily

## A. Plaintiff failed to exhaust his administrative remedies.

Pursuant to the PLRA, prisoners are required to fully exhaust available institutional remedies prior to filing suit in federal court. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). The Supreme Court has held that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L.Ed.2d 12 (2002). It is well established that such exhaustion is "mandatory under the PLRA and unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 201, 211, 127 S. Ct. 910, 166 L.Ed.2d 798 (2007).

The PLRA requires "proper exhaustion of administrative remedies," meaning all applicable procedures and deadlines must be followed. *Woodford v. Ngo*, 548 U.S. 81, 84, 90-91, 126 S. Ct. 2378, 165 L.Ed.2d 368 (2002). The exhaustion requirement's goals can be achieved "only if the prison grievance system is given a fair opportunity to consider the grievance." *Id.* at 82. "That cannot happen unless the grievant complies with the system's critical procedural rules." *Id.* at 82. If a prisoner fails to exhaust available administrative remedies before filing a complaint in federal court, or only partially exhausts them, then dismissal of the complaint is appropriate. *Hopkins v. Ohio*

---

imply the invalidity of those decisions or whether those RIB decisions affected the duration of Plaintiff's term of incarceration. But regardless, Defendants are entitled to summary judgment on Plaintiff's claims on the other grounds explained herein.

*Dep't of Corr.*, 84 F. App'x 526, 527 (6th Cir. 2003) (citing 42 U.S.C. § 1997e(a) and *White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997)).

"Exhaustion may not be completed after a federal complaint has been filed." *Hopkins*, 84 F. App'x at 527 (citing *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999)). "In a claim by a prisoner, failure to exhaust administrative remedies under the PLRA is an affirmative defense that must be established by the defendants." *Napier v. Laurel Cnty.*, 636 F.3d 218, 225 (6th Cir. 2011) (citing *Jones*, 549 U.S. at 204).

The Ohio Department of Rehabilitation and Correction ("ODRC") offers a three-step grievance system to every inmate at each of its institutions. Ohio Admin. Code § 5120-9-31(K) (2013). All inmates and staff members receive a written explanation of the grievance system and instructions for its use. Ohio Admin. Code § 5120-9-31(C).

The first step of the grievance procedure allows inmates to submit an informal complaint to the supervisor of the department or staff member directly responsible for the issue concerning the inmate, but requires any such complaint or grievance to be submitted no later than fourteen days from the date of the event giving rise to the grievance. Ohio Admin. Code § 5120-9-31(K)(1).

Inmates dissatisfied with the results of step one may proceed to step two by obtaining a Notification of Grievance form from the Inspector of Institutional Services, and filing a formal grievance at the prison where the inmate is confined. Ohio Admin. Code § 5120-9-31(K)(2). Formal grievances must be submitted within fourteen days from the date an inmate receives a response to his informal complaint at step one. Ohio Admin. Code § 5120-9-31(K)(2).

If dissatisfied with the results of his formal complaint at step two, the inmate may proceed to step three of the grievance process by requesting an appeal form from the Office of Inspector of Institutional Services and submitting the appeal form to the Office of the Chief Inspector at ODRC. Ohio Admin. Code § 5120-9-31(K)(3). The step three appeal must be filed within fourteen days of the date of the disposition of his formal complaint. Ohio Admin. Code § 5120-9-31(K)(3). The Chief Inspector is to provide a written response within thirty calendar days of receiving an appeal, unless he extends the timeframe for good cause and notifies the inmate. Ohio Admin. Code § 5120-9-31(K)(3). Decisions of the Chief Inspector are final, meaning that the Ohio Administrative Code provides no further means for appeal. Ohio Admin. Code § 5120-9-31(K)(3).

As noted by Defendants, Plaintiff filed eleven informal complaints between January 1, 2015 and February 1, 2016, the date of his last amended complaint. (Doc. 71-11, Hunyadi Affidavit, PageId 728). Of those eleven informal complaints, only three raised issues relating to use of force. (*Id.*). Plaintiff did not proceed to step two of the administrative procedure (formal grievance) on any of the informal complaints relating to use of force. (*Id.*). Further, the informal complaint attached to Plaintiff's complaint is dated July 28, 2015, which is well beyond the fourteen-day period set forth in Ohio Admin. Code § 5120-9-31(K)(1) for filing such complaints after the event occurs. Plaintiff has therefore failed to exhaust his administrative remedies on issues relating to the two use-of-force incidents at issue in this case. (*Id.*). Given that Plaintiff's claims against Defendants Eshem, Rogers, Hart, Cool, and Davis concern the use of force against him, they must be dismissed for failure to exhaust administrative remedies.

**B.** **The January 25, 2015 and June 11, 2015 uses of force against Plaintiff did not violate the Eighth Amendment.**

A prisoner may state an Eighth Amendment claim for excessive force under 42 U.S.C. § 1983 by alleging that he has been assaulted by a corrections officer. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994); *Whitley v. Albers*, 475 U.S. 312, 327, 106 S. Ct. 1078, 89 L.Ed.2d 251 (1986). Not every shove or restraint gives rise to a constitutional violation, however. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014). On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Id.* (quoting *Combs v. Wilkinson,* 315 F.3d 548, 556 (6th Cir. 2002)) (internal quotations omitted). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Id.* (quoting *Williams v. Curtin,* 631 F.3d 380, 383 (6th Cir.2011)) (internal quotations omitted).

An Eighth Amendment excessive force claim has both a subjective and an objective component. *Cordell*, 759 F.3d at 580. The subjective component focuses on "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.; see also Hudson v. McMillian*, 503 U.S. 1, 6, 112 S. Ct. 995, 117 L.Ed.2d 156 (1992). In making this inquiry, the Court must consider the need for the use of force; the relationship between that need and the type and amount of the force used; the threat reasonably perceived by the official; and the extent of the injury inflicted. *Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 320. The Eighth Amendment does not prohibit a *de minimis* use of force "provided that the use of

force is not of a sort repugnant to the conscience of mankind." *Hudson*, 501 U.S. at 10 (quoting *Whitley*, 475 U.S. at 327) (internal quotations omitted).

The objective component requires the "pain inflicted to be 'sufficiently serious'" to offend "contemporary standards of decency." *Cordell*, 759 F.3d at 580 (quoting *Williams*, 631 F.3d at 383, and *Hudson*, 503 U.S. at 8). "While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." *Id.* at 580-81. "'When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident.'" *Hudson,* 503 U.S. at 9. "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.*

Here, Plaintiff has failed to establish either the subjective or objective component of an Eighth Amendment claim with respect to the January 25, 2015 incident and the June 11, 2015 incident.

The record evidence as to the January 25, 2015 incident establishes that Defendant Eshem gave Plaintiff several orders, and Plaintiff failed to comply with such orders. Notably, instead of complying with the orders, Plaintiff had soaped and flooded his cell floor and began squirting milk on Defendant Eshem as he entered Plaintiff's cell. As a result, Defendant Eshem deployed a burst of pepper spray on Plaintiff to prevent him from continuing to engage in such conduct. After the pepper spray had been deployed, Plaintiff initially complied with orders from Defendant Eshem and was cuffed. After being immediately removed from his cell, however, Plaintiff continued to resist

officers as he was escorted to a strip cage.  The record evidence further reflects that he was given a medical examination afterwards where Plaintiff reported only an injury to his wrist from the handcuffs, which was noted to be a one-quarter inch abrasion to his left wrist.  He was otherwise noted to be in good medical condition. There is no evidence to support Plaintiff's allegations that he suffered any more serious injuries as a result of the January 25, 2015 incident, such as internal bleeding and seizures.  In light of the foregoing, the undersigned finds that Defendant Eshem used *de minimis* force in a good faith effort to maintain or restore discipline, which resulted in no injuries to Plaintiff.  The sole injury to Plaintiff was the small abrasion from the handcuffs being placed on Plaintiff after the pepper spray had been deployed by Defendant Eshem, rather than a result of the pepper spray itself.  That separate and minor injury does not demonstrate any excessive force was used by Defendant Eshem.

Similarly, with respect to the June 11, 2015 incident, the record evidence establishes that Defendants Eshem and Rogers responded to Plaintiff's cell after learning Plaintiff had thrown feces and began flooding the range.  When Defendant Eshem arrived, Plaintiff was jumping on his bed.  Plaintiff was given orders with which he did not comply.  Instead, Plaintiff had a milk bag that he squirted towards Defendant Eshem.  Although Defendant Eshem deployed a burst of pepper spray towards Plaintiff, it was ineffective.  Plaintiff was given additional orders but still failed to comply. Plaintiff then made a threat of harm to Defendant Eshem, pulled a bottle from his pants, and pointed the bottle towards Defendant Eshem.  At that time, Defendant Eshem deployed the pepper spray towards Plaintiff for the second time, but it did not strike Plaintiff in the desired area.  Plaintiff then was given additional orders to comply, which he did not do.

Instead, he picked up the bottle again. Defendant Eshem deployed the pepper spray for the third time, which had the desired effect. Defendant Eshem therefore deployed only one dose of pepper spray towards Plaintiff that was effective. Plaintiff was removed from his cell at that time. Defendant Rogers assisted in placing Plaintiff back in his cell after he refused a decontamination shower and his property had been removed. When Plaintiff was examined by Defendant Hart that same day, he reported: "I got no injuries." (Doc. 71-3, PageId 694). Defendant Hart also noted that Plaintiff was healthy with no acute distress and no injuries. There is no record evidence to support Plaintiff's allegations that he suffered any more serious injuries as a result of the June 11, 2015 incident, such as internal bleeding and collapsed lungs. In light of the foregoing, the undersigned finds that Defendant Rogers used no force against Plaintiff and that Defendant Eshem used *de minimis* force in a good faith effort to maintain or restore discipline, which resulted in no injuries to Plaintiff.

Neither the January 25, 2015 nor the June 11, 2015 *de minimis* use of force in a good faith effort to maintain or restore discipline can support a finding of an Eighth Amendment violation. *Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002) (finding no Eighth Amendment violation when officer sprayed an inmate in the eyes and face with liquid mace as a measure of prisoner control); *Thompson v. Joseph*, No. 12-cv-992, 2014 WL 1685918, at *8-10 (S.D. Ohio Apr. 29, 2014) (finding one short burst of pepper spray by a single guard to restore discipline, absent other aggravating factors, was insufficient to state a valid Eighth Amendment claim). Accordingly, Plaintiff has failed to establish a § 1983 claim against either Defendant Eshem or Defendant Rogers based on excessive force under the Eighth Amendment.

**C.** **Defendant Hart was not deliberately indifferent to Plaintiff's medical needs following the January 25, 2015 use of force.**

A prisoner may maintain an Eighth Amendment claim against a prison doctor under 42 U.S.C. § 1983 when the prison doctor exhibits "deliberate indifference to [the] serious medical needs" of a prisoner. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S. Ct. 285, 50 L.Ed.2d 251 (1976). An Eighth Amendment claim concerning medical care by a prison doctor has an objective component and a subjective component. *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir.2001). The objective component requires a plaintiff to prove a "sufficiently serious" medical need. *Id.* at 702 (citing *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994)) (internal quotations omitted). This type of medical need has been defined as one "'that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Jones v. Muskegon County*, 625 F.3d 935, 941 (6th Cir. 2010) (quoting *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)). The subjective component requires a plaintiff to prove that the doctors had a "sufficiently culpable state of mind." *Comstock*, 273 F.3d at 703 (citing *Farmer*, 511 U.S. at 834) (internal quotations omitted). To satisfy this component, the prison doctor must have been more than negligent. *Estelle*, 429 U.S. at 109 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."); *Farmer*, 511 U.S. at 835 (noting that deliberate indifference "describes a state of mind more blameworthy than negligence"). Rather, the prison doctor must have acted with a state of mind similar to recklessness. *Farmer*, 511 U.S. at 835. To prove this requisite level of culpability, a plaintiff must show that the prison doctor:   (1)

subjectively knew of a risk to the inmate's health, (2) drew the inference that a substantial risk of harm to the inmate existed, and (3) consciously disregarded that risk. *Jones*, 625 F.3d at 941 (citing *Farmer*, 511 U.S. at 835).

Here, Plaintiff has failed to establish either the subjective or objective component of an Eighth Amendment deliberate indifference claim against Defendant Hart with respect to the January 25, 2015 incident. First, Plaintiff has not shown that his medical needs were sufficiently serious. The record evidence plainly shows that Plaintiff was timely examined by Defendant Hart. The only injury reported by Plaintiff at that time was a cut on the wrist caused by the handcuffs. Defendant Hart noted the cut on wrist in the record and advised that it be cleaned. She otherwise noted that Plaintiff was in good medical condition, and she advised Plaintiff to follow up if any complications arose. Plaintiff also was offered a decontamination shower, but he refused. There is no evidence in the record that Plaintiff followed up to report additional injuries to Defendant Hart. Nor is there any medical evidence in the record substantiating Plaintiff's claim that he suffered from other maladies, such as internal bleeding or seizures, from the burst of pepper spray at any point in time following the incident.

Second, even if Plaintiff did suffer medical needs that were sufficiently serious, no record evidence shows that Defendant Hart knew of and disregarded a substantial risk of harm to Plaintiff's health. The extent of the injuries noted by Defendant Hart in the medical examination was the cut on Plaintiff's wrist. He was otherwise noted to be in good condition. To the extent Plaintiff claims more serious injuries existed, those injuries were not readily observable from an external examination. Plaintiff has not presented any evidence that would show Defendant Hart knew of those alleged injuries,

believed a substantial risk of harm existed, and consciously disregarded a substantial risk of harm to Plaintiff.  At best, Defendant Hart could be said to have acted negligently with regard to any of the alleged injuries, which is not enough to sustain a claim based upon deliberate indifference to medical needs under the Eighth Amendment.

In light of the foregoing, the undersigned finds that Plaintiff has failed to establish his § 1983 claim against Defendant Hart for deliberate indifference to medical needs under the Eighth Amendment.

### D.     Defendants Cool and Davis cannot be held liable for failure to protect.

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994).   Prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care.  *Hudson v. Palmer,* 468 U.S. 517, 526–27, 104 S. Ct. 3194, 82 L.Ed.2d 393 (1984).  To maintain an Eighth Amendment claim against Defendants Cool and Davis under 42 U.S.C. § 1983, Plaintiff must establish that Defendants acted with "deliberate indifference" to a known risk of harm to Plaintiff.  *Farmer,* 511 U.S. at 825-26; *Woods v. Lecureux,* 110 F.3d 1215, 1222 (6th Cir. 1997).   As with the other Eighth Amendment claims, this claim has both an objective component and a subjective component.  *Woods*, 110 F.3d at 1222.  The objective component requires that the deprivation be "sufficiently serious."  *Id.* (citing *Farmer*, 511 U.S. at 834).  The subjective component requires that the prison officials have "a sufficiently culpable state of mind."  *Id.* (citing *Farmer*, 511 U.S. at 834) (internal quotations omitted).  A prison official may be found to have the requisite state of mind if

he or she knows the prisoner faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer,* 511 U.S. at 847.

However, it is well established that the doctrine of *respondeat superior* does not apply in § 1983 lawsuits to impute liability onto supervisory personnel. *See, e.g., Wingo v. Tennessee Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (per curiam) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 325, 102 S. Ct. 445, 70 L.Ed.2d 509 (1981)). "In order to find supervisory personnel liable, a plaintiff must allege that the supervisors were somehow personally involved in the unconstitutional activity of a subordinate, or at least acquiesced in the alleged unconstitutional activity of a subordinate." *Id.* (citing *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982) and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)) (internal citations omitted); *see also Colvin v. Caruso*, 605 F.3d 282, 292 (6th Cir. 2010) (quoting *Cardinal v. Metrish*, 564 F.3d 794, 803 (6th Cir. 2009)) (to succeed on a claim against supervisory state prison officials, the plaintiff must show the officials "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers"). Prison officials whose only roles "involve their denial of administrative grievances and their failure to remedy the alleged [unconstitutional] behavior" cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). An alleged failure of a prison official to adequately investigate claims of misconduct also does not rise to the level of "encouragement" that would make the official liable for such misconduct. *Knop v. Johnson*, 977 F.2d 996, 1014 (6th Cir. 1992); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

Here, Plaintiff has failed to establish that either Defendant Cool or Defendant Davis was personally involved in or acquiesced in the unconstitutional activity of a subordinate. Plaintiff alleges that Defendant Cool failed to properly supervise SOCF correctional officers and investigate alleged excessive uses of force against inmate as well as ongoing threats to hurt or kill plaintiff. (Doc. 10, PageId 68-69, 71, 74-76). There is, however, no record evidence that Defendant Cool acted beyond his supervisory capacity with respect to Plaintiff. Defendant Cool, as Deputy Warden at SOCF, facilitates the reporting and investigation of all use of force incidents and supervises the process of such reporting and investigations. In that role, he did not have reason to believe that the reporting of use of force with respect to either the January 25, 2015 or the June 11, 2015 incident involving Plaintiff was inaccurate or false. Defendant Cool also is not involved in the review or consideration of protective custody for prisoners in his role at SOCF. Plaintiff has pointed to no evidence that would demonstrate any personal involvement or active participation by Defendant Cool in any alleged misconduct. Defendant Cool's alleged failure to remedy unconstitutional behavior and alleged failure to adequately investigate are insufficient to impose § 1983 liability upon him.

As for Defendant Davis, Plaintiff alleges she failed to assign him to protective custody. The record evidence, however, reflects that Defendant Davis, the Unit Management Chief at SOCF, is not involved in any way in protective custody investigations or decisions. She therefore did not personally deny Plaintiff protective custody on any occasion. Plaintiff has pointed to no evidence that would demonstrate

any personal involvement or active participation by Defendant Davis in any alleged failure to assign him to protective custody.

Indeed, the evidence shows that Plaintiff's sole request for protective custody in the past three years was on May 10, 2017 when he was housed at the Madison Correctional Institution, which belies any allegation that either Defendant Davis or Defendant Cool was personally involved or actively participated in denying Plaintiff protective custody at SOCF.  (Doc. 71-10, Freeman Affidavit, PageId 724).

In light of the foregoing, the undersigned finds that Plaintiff has failed to establish a viable § 1983 claim against either Defendant Cool or Defendant Davis for failure to protect under the Eighth Amendment.

### E.    Defendants are entitled to qualified immunity.

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982).  Qualified immunity insulates government officials not only from individual liability for money damages, but also from the burdens and expenses of litigation and trial.  *Saucier v. Katz*, 533 U.S. 194, 200-01, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 172 L.Ed.2d 565 (2009).  The doctrine of qualified immunity is intended to balance two competing interests:   "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231.

Qualified immunity "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S. Ct. 534, 116 L.Ed.2d 589 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 343, 106 S. Ct. 1092, 89 L.Ed.2d 271 (1986)); *see also Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008). Qualified immunity applies regardless of whether the official's error was a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson*, 555 U.S. at 231.

Here, the record evidence plainly establishes that Defendants' acts or failures to act did not violate the Eighth Amendment. First, no force was used by Defendant Rogers, and the *de minimis* use of force by Defendant Eshem "was applied in a good-faith effort to maintain or restore discipline" and not "maliciously and sadistically to cause harm." *Hudson,* 503 U.S. at 6. Second, Defendant Hart timely provided Plaintiff with a medical examination following the January 25, 2015 incident and recommended appropriate treatment for Plaintiff's small wrist abrasion, which is the sole injury reported by Plaintiff and the only readily observable injury following the incident. There is no evidence she knew of and consciously disregarded a substantial risk to Plaintiff's health. Third, Defendants Cool and Davis were not personally involved and did not otherwise actively participate in any unconstitutional activity directed towards Plaintiff.

Given the absence of any Eighth Amendment violation, Plaintiff cannot show he suffered a deprivation of any clearly established statutory or constitutional rights of which a reasonable prison official would have known. Therefore, Defendants are immune from Plaintiff's § 1983 claims under the Eighth Amendment.

## IV. Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment (Doc. 71) be **GRANTED** and that all claims against Defendants Eshem, Rogers, Hart, Cool and Davis be **DISMISSED** with prejudice.

_s/ Stephanie K. Bowman_
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

GERALD THOMPSON,                                    Civil Action No. 1:15-cv-553

      Plaintiff,                                        Barrett, J.
                                                    Bowman, M.J
   vs.

LT. ESHAM, et al.,

      Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof.   That period may be extended further by the Court on timely motion by either side for an extension of time.   All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.   A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections.   Failure to make objections in accordance with this procedure may forfeit rights on appeal.   *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).